IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No. 2:24-cr-55 |
| | ) |
| ANDREW JOSEPH FERNANDEZ, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S POSITION ON SENTENCING**

Andrew Fernandez's free life is over. It ended when he took to the internet and unleashed his corrupt fantasy on young girls who thought he was someone they knew through a friend of a friend.

There is no excusing Mr. Fernandez's behavior, and nothing in this position paper is meant to diminish the mental, physical, and emotional toll his actions have taken on others, especially the young people he manipulated and abused. Authorities put an end to his behavior on May 2, 2024. Mr. Fernandez now faces decades of imprisonment for his conduct. And he will never truly be free again, as he will be both a sex offender and subject to supervised release.

Mr. Fernandez cannot make amends, but he has started his path of reflection, introspection, treatment, and rehabilitation. It may take a long time, if it is possible, to understand the "why" behind Mr. Fernandez's actions. But his sincere hope is that the victims and their families will one day heal and find closure.

Mr. Fernandez has taken responsibility for his actions. Once the parties completed their investigations and negotiations, he entered a guilty plea to one count of production and one count of distribution of child pornography, sparing the victims the ordeal of trial. Under the terms of the plea agreement, the applicable statutory range of imprisonment is 15 to 50 years. The applicable

advisory Guidelines range is 600 months, and Mr. Fernandez understands he may receive a sentence of 50 years if his sentences run consecutively. He respectfully requests a sentence of 25 years of imprisonment because it is "sufficient, but not greater than necessary" to accomplish the purposes of sentencing in this case.

## INTRODUCTION

Everyone is more than the worst thing that they have done, and that is true even for those who commit crimes against children. Admittedly, it can be difficult to evaluate a case like this through a wider lens. But this Court must. Title 18, § 3553(a) requires this Court to consider more than just the offense conduct to arrive at the appropriate sentence, including Mr. Fernandez's personal history and characteristics, the kinds of sentences available, the Guidelines range and pertinent policy statements, the need to avoid unwarranted sentencing disparities, the need to pay restitution, and the need for the sentence to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

Though he engaged in the production and distribution of child pornography over a period ten months, Mr. Fernandez is not a "lost cause." He is eager to engage in rehabilitative programming and treatment, both in prison and, eventually, in the community. He has gained considerable personal insight since his arrest. He also has the continued love and support of his family. For these reasons, a sentence of 25 years of imprisonment is appropriate.

## THE SENTENCING FACTORS SUPPORT A 25-YEAR TERM OF IMPRISONMENT

**I.  A sentence of 25 years adequately accounts for the nature and circumstances of the offense.**

The Court is confronted with two very different pictures: Andrew Joseph Fernandez and his crime. There is no running away from what Mr. Fernandez did. As the PSR recounts, the language and nature of the chats in this case are shocking and not easily put aside. PSR ¶¶ 10 - 19

(setting forth offense conduct). Such facts threaten to crowd out all other aspects of Mr. Fernandez's character. However, the offense conduct is not the end of this story; rather, it represents the start of Mr. Fernandez's rehabilitative journey.

Mr. Fernandez does not dispute what is set forth in the PSR and the statement of facts. Everything there is true, and he fully admits what he did. For ten months, he engaged in a pattern of conduct that involved chatting online with underage girls, coercing them to expose themselves, sending them child pornography, and sending them videos of himself performing sexual activities. He portrayed himself as a friend and confidant to the victims, gaining their trust. In addition to the Jane Does discussed in the statement of facts and PSR, the government found evidence of other minor victims.

Importantly, Mr. Fernandez has accepted responsibility for his conduct before this Court. Perhaps even more importantly, he has admitted his conduct to his family. His public admissions to his family, the Court, and the community show that he has internalized his mistakes. His agreement to pay restitution and the relevant special assessments further reflects his understanding of the harm he has caused. A prison sentence of 25 years is very long time, and given that Mr. Fernandez is 33 years old, he will be in his late 50's. Conversely, a sentence of 50 years of incarceration is not needed for someone who accepted, and continues to accept responsibility, along with already moving forward with rehabilitation.

## II. A 25-year sentence is appropriate in light of Mr. Fernandez's personal history and characteristics.

Besides the nature of this offense, the Court must consider Mr. Fernandez's character. The Court should begin the letter of support submitted alongside this position paper, which conveys the anomalous nature of these crimes relative to the rest of Mr. Fernandez's life. *See* Exh. 1.

3

### A. *Mr. Fernandez's childhood and early adulthood*

Mr. Fernandez was born on Valentine's Day in 1992 in Mission Viejo, California to David and Sandra Fernandez. Mr. Fernandez is the youngest of their three children.

The family moved around a lot due to his father's frequent changes in employment. Seeing his life as mostly middle-class, Mr. Fernandez recalls attending good schools and enjoying meeting new people. He never really struggled to make friends, even though changing schools so much was challenging. When not in school or doing his homework, Mr. Fernandez enjoyed being outdoors, watching movies, and playing guitar.

Still, Mr. Fernandez recalls that his family was not "picture perfect." His understated perspective shows that he has normalized the abuse that he endured. David Fernandez verbally, psychologically, and physically abused his family and was unfaithful to his marital vows. In preparation for this sentencing, Sandra Fernandez detailed her complex post-traumatic stress related to her twenty-four-year marriage. For example, she described one specific incident with Andrew that resulted in medical intervention. Andrew was slammed into a shower, bleeding, while water was sprayed in his face. As Mr. Fernandez and his mother shared, all the children maintain the emotional scars of their father's treatment. Ms. Fernandez remains supportive of her son, although she was unable to afford to come to his sentencing. PSR ¶¶ 119, 121-125.

Naturally, Mr. Fernandez's relationship with his father is much more complicated. Although his father remembers the end of his marriage differently, Mr. Fernandez clearly recalls why his parents' marriage failed. Throughout his life, Mr. Fernandez maintained a tumultuous relationship with his father. They did not speak for years on end. It is only recently that Mr. Fernandez has started to accept the olive branch his father has extended.

4

### B. *Substance Abuse, Mental Health, United States Navy, and Marriage*

Beginning at the age of 16, Mr. Fernandez drank alcohol socially. At the age of 17, after a knee injury, his use of prescription medication turned into abuse, off and on, until the age of 22. Around the same age, Mr. Fernandez started using marijuana daily, until he enlisted in the United States Navy in August 2020.

When he joined the Navy, Mr. Fernandez met Samantha Eaton, whom he married during the COVID-19 pandemic. She, too, was in the Navy, and life seemed to be going well. However, in May 2023, while his wife was deployed, Mr. Fernandez began to surreptitiously inject steroids. He hid what became the significant abuse of that substance. When he was arrested on May 2, 2024, the police found a large supply of steroids, specifically testosterone, in the home.

After his arrest and incarceration, Mr. Fernandez learned that his wife, Ms. Eaton, was expecting their first child. Although they are now divorced, Ms. Eaton welcomed their daughter in January 2025. Mr. Fernandez was not there for his only child's birth, and because of his conduct, he will miss her entire childhood and adolescence. This devastating loss has forced him to rethink his life choices. Ms. Eaton remains supportive of Mr. Fernandez, and she appreciates the ongoing support of his family.

### C. *Mr. Fernandez, now and in the future*

Mr. Fernandez has been an inmate at Western Tidewater Regional Jail for about eleven months. Many in his pod participate in faith meetings, and he attends those meetings seeking support and guidance on his path forward. He is willing to participate in any psychiatric and psychological treatment that is available. He also wants to participate in sex offender treatment and substance abuse treatment. During his short period of incarceration, Mr. Fernandez's mindset already has evolved into one of acknowledgement and remorse.

This is a new beginning for Mr. Fernandez, and his progress so far weighs in favor of a sentence of 25 years of imprisonment—a lengthy sentence, by any measure. He wants to understand why he chose this path, and through that insight, he hopes he can confront and learn to cope with his deficits through treatment and rehabilitative programming. He sincerely hopes he never hurts anyone else again. Substance abuse treatment will address his problematic drug use. He acknowledges that he has a long way to go and must participate in rehabilitation and treatment to rebuild the trust of his family and the community.

**III.     A sentence of 25 years' imprisonment will accomplish the purposes of sentencing.**

One judge has framed the purposes of sentencing as follows:

> Deterrence, incapacitation, and rehabilitation are prospective and societal – each looks forward and asks: What amount and kind of punishment will help make society safe? In contrast, retribution imposes punishment based upon moral culpability and asks: What penalty is needed to restore the offender to moral standing within the community?

*United States v. Cole*, 2008 WL 5204441 *4 (N. D. Ohio Dec. 11, 2008). Here, a sentence of 25 years' imprisonment will adequately address both the retrospective and prospective purposes of sentencing without being unduly harsh. A sentence that is too harsh is unjust, threatens to diminish respect for the law, creates unwarranted disparities, and could impede rehabilitation and treatment efforts.

A.     *Just punishment*

Section 3553(a)(2)(A) requires the judge to consider "the need for the sentence imposed…to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." This consideration is retrospective, focusing on the offense, Mr. Fernandez's blameworthiness, and the harm caused by the crime. Richard S. Frase, *Excessive*

*Prison Sentences, Punishment Goals, and the Eighth Amendment: "Proportionality" Relative to What?*, 89 Minn. L. Rev. 571, 590 (February 2005).

Mr. Fernandez does not deny the seriousness of the offense and the harm he caused. But the offense is not considered in a vacuum. Mr. Fernandez's mental state at the time of the offense is relevant in determining what constitutes "just" punishment. He was acting impulsively and self-destructively when he committed the offense, engaging in reckless, disinhibited behavior.

Mr. Fernandez is 33 years old now, and the defense is requesting a 25-year sentence. Upon release, he will have spent half his life in prison. This is a considerable punishment, especially for someone without a criminal history or prior exposure to prison. *See* PSR ¶¶ 112-117 (documenting lack of criminal history). A 25-year sentence is consistent with the Guidelines range, which is driven exclusively by the Sentencing Commission's determination of severity of the instant offense. Such a sentence will necessarily have a tremendous impact on Mr. Fernandez.

As several courts have recognized, collateral consequences of conviction, such as registration as a sex offender, are relevant to the "need" for the sentence imposed to reflect just punishment. *See, e.g.*, *United States v. Pauley*, 511 F.3d 468, 474-75 (4th Cir. 2007) (noting that consideration of collateral consequences of a conviction is consistent with § 3553(a)); *United States v. Garate*, 543 F.3d 1026, 1028 (8th Cir. 2008) (on remand from the Supreme Court for reconsideration, overruling prior holding that it was inappropriate for the district court to consider the lasting effects of being required to register as a sex offender); *United States v. Wachowiak*, 496 F.3d 744, 747 (7th Cir. 2007) (affirming variance based on "the stigma of being a sex offender"), *abrogated on other grounds by Nelson v. United States*, 555 U.S. 350, 351 (2009). Here, Mr. Fernandez will be considered a sex offender forever. He will most likely not have access to the internet, and he will be marked everywhere he goes.

This Court must balance the nature of the offense, Mr. Fernandez's history and characteristics, and the collateral consequences of conviction. Taking these factors into account, a sentence of 25 years in prison adequately reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense.

B. *Adequate deterrence*

It is a commonly held belief that the higher the sentence, the greater the effect in deterring others; however, empirical research shows no relationship between sentence length and deterrence. The focus of this Court's inquiry under § 3553(a)(2)(B) is "marginal deterrence," *i.e.,* "whether any particular quantum of punishment results in increased deterrence and thus decreased crime." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006). Empirical research on general deterrence has suggested that "while *certainty* of punishment has a deterrent effect, 'increases in severity of punishments do not yield significant (if any) marginal deterrent effects." *Id.* After reviewing the available evidence on whether harsher sentences deter, Professor Doob asked and answered the following question:

> Can we conclude that variation in the severity of sentences would have differential (general) deterrent effects? Our reply is a resounding no. We could find no conclusive evidence that supports the hypothesis that harsher sentences reduce crime through the mechanism of general deterrence. Particularly given the significant body of literature from which this conclusion is based, the consistency of the findings over time and space, and the multiple measures and methods employed in the research conducted, we would suggest that a stronger conclusion is warranted. More specifically, the null hypothesis that variation in sentence severity does not cause variation in crime rates should be conditionally accepted.

Anthony N. Doob & Cheryl Marie Webster, *Sentence Severity and Crime: Accepting the Null Hypothesis*, 35 Crime & Just. 143, 187 (2003). Indeed, "[t]he findings regarding general deterrence are relatively settled":

> [G]eneral deterrence works in the absolute sense: there is *a connection* between criminal sanctions and criminal conduct. However, there is insufficient evidence to support a direct correlation between higher penalties and a reduction in the crime rate.… It is counter-intuitive to suggest that higher penalties will not reduce the crime rate. However, the evidence is relatively definitive.

Mirko Bagaric, *A Rational Theory of Mitigation and Aggravation in Sentencing: Why Less Is More When It Comes to Punishing Criminals*, 62 Buff. L. Rev. 1159, 1202-03 (2014) (footnotes omitted).

To summarize, "studies repeatedly show that awareness of potentially severe sanctions does not produce less crime." *Id.*, at 1203. So general deterrence "does not require a particularly burdensome penalty, merely one that people would seek to avoid," which "could be satisfied by a fine or a short prison term." *Id.* at 1205. Moreover, there are additional reasons that severity does not deter with certain types of offenses. "[S]erious sexual and violent crimes are generally committed under circumstances of extreme emotion, often exacerbated by the influence of alcohol or drugs." Tonry, *Purposes and Functions of Sentencing*, at 28-29. That is the case here, where steroid abuse likely contributed to Mr. Fernandez's mindset and impulsivity.

Relatedly, an extended prison sentence cannot be justified on specific deterrence grounds because lengthier prison sentences do not achieve better recidivism rates. This is consistent with the literature. With respect to sex offenses, individual studies and meta-analyses consistently find that "*incarceration has little, if any, impact on recidivism*." Kevin L. Nunes, et al., *Incarceration and Recidivism among Sexual Offenders*, 31 Law & Human Behavior 355, 314 (2007) (emphasis added). Indeed, not only is the evidence in support of incarceration's deterrent effect "unimpressive," one study found that, "[c]ounterintuitively, some [sex] offenders may actually experience incarceration as *less* aversive that some alternative sanctions." *Id.* at 356. Overall, incarceration does little to address the risk of re-offense in cases where recidivism is an issue.

9

Certainty of punishment is no longer an unknown for Mr. Fernandez. He knows his conduct was harmful and egregious. More punishment will not make him less likely to reoffend—his arrest, prosecution, and a 25-year sentence sufficiently accomplishes that.

C. *Treatment and rehabilitation*

As a condition of the Court's sentence, Mr. Fernandez requests a recommendation for comprehensive mental health care and sex offender treatment. Mr. Fernandez wants treatment and knows he needs it. Ideally, he will receive it in the Bureau of Prisons and during supervised release. Reviews of sex offender treatment programs show that cognitive-behavioral therapy, relapse prevention, and self-regulation have proven successful in treating offenders. Mr. Fernandez would benefit from this treatment.

Further, Mr. Fernandez asks this Court to recommend that he receive substance abuse treatment while incarcerated. The abuse of controlled substances, including steroids, almost certainly contributed to his harmful choices.

The treatment Mr. Fernandez needs most—treatment designed to achieve rehabilitation—should also occur in the community, following his completion of a term of incarceration. Kimberly Wiebrecht, *Evidence-Based Practices and Criminal Defense: Opportunities, Challenges, and Practical Considerations* 8 (2008), *available at* http://nicic.gov/library/files/023356.pdf ("[t]he research...states that treatment interventions are more effective when provided to defendants while they are in the community rather than in an institutional setting."); *see also* Bitna Kim et al., *Sex Offender Recidivism Revisited: Review of Recent Meta-analyses on the Effects of Sex Offender Treatment*, 17 Trauma, Violence, and Abuse 1, 11 (2016) ("The research indicates that treatment in the community is more effective than treatment in institutions.).

Regarding how Mr. Fernandez's treatment needs should affect his sentence, it is important to note that the Sentencing Reform Act "rejects imprisonment as a means of promoting rehabilitation." 18 U.S.C. § 3582 (mandating that the district court, when deciding whether to impose a term of imprisonment and the length of the term imposed, "recognize[ ] that imprisonment is not an appropriate means of promoting correction and rehabilitation"). In *Tapia v. United States*, 131 S. Ct. 2382 (2011), the Supreme Court unanimously held that a district court is prohibited from imposing or increasing a term of imprisonment in order to promote rehabilitation.

D.      *Need to avoid unwarranted disparities*

The Sentencing Commission reports that in fiscal year 2020, "the average sentence for offenders convicted of production of child pornography was 272 months." U.S.S.C., *Quick Facts: Sexual Abuse FY 2020, available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Sexual_Abuse_FY20.pdf (last visited July 21, 2021). Eighty-five percent of individuals convicted of a production offense were convicted of an offense carrying a mandatory minimum penalty. *Id.* Their average sentence was 294 months, while the average sentence without a mandatory minimum penalty was 146 months. Nearly half of all individuals sentenced for sexual abuse offenses—about 41%—received downward variances from the Guidelines range, with an average sentence reduction of about 32%. *Id.* Admittedly, there are aggravating aspects to Mr. Fernandez's case. A 25-year sentence accounts for the aggravating factors while maintaining consistency with sentences imposed for production of child pornography across the country.

It is instructive to compare the facts of Mr. Fernandez's case with others involving the sexual abuse of children or child pornography. In *United States v. Harris,* for example, the defendant went to trial and was convicted of multiple counts of production of child pornography,

11

transportation of child pornography, online enticement, obstruction of justice, among others. No. 2:14-cr-76, ECF No. 54 (E.D. Va. Oct. 17, 2014) (superseding indictment). Based only on the crimes of conviction, Harris was responsible for the sexual abuse of nine different girls, on numerous occasions, and over a period of years. No. 2:14-cr-76, ECF No. 149 (gov't position on sentencing). The girls' ages ranged from 12 years-old to 17 years-old. At sentencing, the government argued that Harris abused hundreds of other girls. *Id.* Typically, Harris posed as an underage boy to engage girls in conversation, demanded sexually explicit photos of the girls or the performance of sexual acts, and then threatened or coerced them to continue sending sexually explicit images. *Id.* In addition to the child sexual exploitation offenses, Harris also obstructed justice. *Id.* Harris never accepted responsibility for any of his conduct. He attempted to thwart the United States' prosecution throughout the proceedings. At sentencing, the Court imposed a sentence of 360 months of imprisonment on the production of child pornography counts, and a sentence of 600 months for the violation of § 2422(b), in addition to lower sentences for other offenses. No. 2:14-cr-76, ECF No. 153 (sentencing minutes). In contrast, Mr. Fernandez did not seek trial, despite his right to and the severe consequences he faced even with a guilty plea.

In 2021, after fighting extradition from Canada for 7 years, Marco Viscomi pled guilty to two counts of production of child pornography, and the Court ultimately sentenced him to 40 years in prison. *United States v. Marco Viscomi*, No. 2:12cr134 (E.D. Va. July 30, 2020) (Smith, J.). For two to three years, Mr. Viscomi engaged in a pattern of conduct that involved chatting online with underage females and coercing them to expose their genitalia and perform sexual activities while he watched. As part of this pattern of behavior, he commanded the girls to use household objects for penetration, to use the objects with force, and to involve siblings or other family members in the abuse. His pattern revealed an interest in bondage, sadism, and gagging/vomiting. When the

12

girls expressed pain, distress, and humiliation during the online encounters, Mr. Viscomi would escalate his behavior or make threatening remarks. His threats exploited the girls' sense of embarrassment or shame surrounding sex and sexual activity. In the case of Jane Doe 1, Mr. Viscomi told her he had gained access to information about her sexual activity through her computer and threatened to reveal that information to her family if she did not comply. In addition to the Jane Does identified in the complaint/information, the government found evidence of at least 70 known minor victims, along with additional victims/attempted victims.

Because sentencing requires an assessment of the *relative* seriousness of Mr. Fernandez's offense, these other cases are relevant. While certain aspects of these cases may be similar, the defendants committed worse conduct against more victims and refused to accept responsibility. *Harris* involved a trial, many counts of conviction including obstruction of justice, and continued misconduct by the defendant throughout the proceedings, in addition to many other aggravating factors. *Viscomi* involved having victims seek out their own siblings to victimize. A sentence approaching the ones imposed in these cases would create unwarranted disparity.

Mr. Fernandez acknowledges that his offense was incredibly serious. His requested sentence is consistent with the advisory Guideline range and the statutory penalty range, and it is sufficient to balance out the aggravating factors in Mr. Fernandez's case, including the number of victims and the nature of the online communications.

E.  *Public protection*

Section 3553(a)(2)(C) requires this Court to consider "the need for the sentence imposed…to protect the public from further crimes of the defendant." This purpose relates to the defendant's risk of recidivism and the danger posed by the defendant, if any. It "is particularly important for those offenders whose criminal histories show repeated serious violations of the

13

law." S. Rep. No. 98-225 at 76 (1983). Mr. Fernandez's prior history reflects a strong potential for rehabilitation through appropriate treatment he has not yet received.

Mr. Fernandez is aware of the harm he has caused, remorseful, and amenable to treatment. He has started to gain insight into his offense conduct since his arrest, and hopefully, this is his last offense. Proper treatment and offense specific needs should mitigate any risk that Mr. Fernandez may pose. *See* Renee Sorrentino, M.D., et al, *Sex Offenders: General Information and Treatment*, 48 Psychiatric Annals 120, 123 (2018) ("The dynamic factors and criminogenic needs that are associated empirically with reoffending are ones that can be changed through intervention…").

Again, Mr. Fernandez hopes to obtain mental health and sex offender treatment during his time in the Bureau of Prisons for this purpose. The Bureau of Prisons ("BOP") has Residential Sex Offender Treatment Program (SOTP-R), a high intensity program designed to target high-risk sex offenders. *See* Federal Bureau of Prisons, Reentry Services Divisions, *First Step Act Approved Programs Guide*, https://www.bop.gov/inmates/fsa/docs/fsa-approved-program-guide.pdf?v=1.0.2 (January 2024), pg. 41; *see also* Federal Bureau of Prisons, *Sex Offender Programs*, U.S. Dept. of Justice, https://www.bop.gov/policy/progstat/5324_010.pdf, pg. 14 (Feb. 15, 2013). The SOTP-R program requires a cumulative 400 hours of programming over 12–18 months with 10–12 hours of programming per week. *Id.* at 23. This appears to be the type of programming Mr. Fernandez needs.

Another, moderate intensity program known as the Non-residential Sex Offender Treatment Program (SOTP-NR) is designed to target lower risk individuals. *Sex Offender Programs*, U.S. Dept. of Justice, https://www.bop.gov/policy/progstat/5324_010.pdf, pgs. 14-15 (Feb. 15, 2013). The treatment programs consist of a multi-step approach involving individualized

14

treatment plans, supervision, and cognitive behavioral therapy (CBT). *Id.* The programs themselves are divided into phases from orientation, treatment, and transition to help offenders develop pro-social behaviors and reduce the risk of re-offense. *Id.* at 18. A 25-year sentence would provide Mr. Fernandez with time to fully engage with these programs, and others like them.

Additional imprisonment beyond 25 years in the Bureau of Prisons is unlikely to facilitate any sort of rehabilitation. As discussed above, proper treatment is essential to mitigate risk of re-offense and protect the public, and that is best accomplished in the community. In his 50s, Mr. Fernandez will still be within his working years, and able to work towards restitution.

After two decades in custody, Mr. Fernandez would be unlikely to reoffend. It is well established that recidivism risk declines with age. *See* U.S. Sent. Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* (2004), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf. Older individuals are substantially less likely to recidivate than younger ones, across all sentence length categories, and the effect increases with age. *See* U.S. Sent. Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* (December 2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf.

15



*Id.* at 11, 25.

## CONCLUSION

Sentencing will be the culmination of a painful chapter and will shape the new beginning Mr. Fernandez hopes to pursue. Mr. Fernandez's self-destructive behavior harmed not only his young victims, but also his family and himself. A sentence of 25 years balances the severity of the conduct and the immense harm it caused with the factors that contributed to the offense and Mr. Fernandez's ability to address these factors. Twenty-five years is a harsh sentence that will accomplish the purposes of sentencing while complying with § 3553(a)'s mandate. Finally, this Court can impose a term of supervision up to life to address any lingering concerns regarding recidivism and public safety, recognizing that Mr. Fernandez will also register as a sex offender.

Respectfully submitted,

ANDREW JOSEPH FERNANDEZ

By: _____/s/_____
      Suzanne V. Suher Katchmar
      Virginia State Bar No. 37387
      Assistant Federal Public Defender
      Attorney for Andrew Joseph Fernandez
      Office of the Federal Public Defender
      500 East Main Street, Suite 500
      Norfolk, Virginia 23510
      Telephone: 757-457-0890
      Facsimile: 757-457-0880
      suzanne_katchmar@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 28th day of February 2025, I will electronically file the foregoing with the Clerk of Court using the CM/EMF system, which will send a notification of such filing (NEF) to all counsel of record.

I FURTHER CERTIFY that a true and correct copy of the foregoing will be sent by electronic mail to:

> Samantha Bean
> United States Probation Officer
> 600 Granby Street
> Norfolk, Virginia 23510

> /s/
> Suzanne V. Suher Katchmar
> Assistant Federal Public Defender
> Virginia State Bar No. 37387
> Attorney for Andrew Joseph Fernandez
> Office of the Federal Public Defender
> 500 East Main Street, Suite 500
> Norfolk, Virginia 23510
> Telephone:  (757) 457-0890
> Facsimile:  (757) 457-0880
> Email:  suzanne_katchmar@fd.org